**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-10533

(Summary Calendar)
_____

MARY JANE FORBUSH, Individually and on behalf of all others similarly situated,

Plaintiffs - Appellants,

versus

J C PENNEY COMPANY, INCORPORATED, Pension Plan; WILLIAM J ALCORN; JAMES P BRYANT; FRANK ENGELS; JAY F HUNDLEY; ROBERT S GORIN; HENRY H SCOTT, JR; GERALD L SHORES,

Defendant-Appellees.

*********************************************

CATHERINE E RHODES, Individually and on behalf of all others similarly situated

Plaintiffs-Appellants,

versus

J C PENNEY COMPANY INCORPORATED, Pension Plan; WILLIAM J ALCORN, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; JAMES P BRYANT, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; FRANK ENGELS, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; JAY F HUNDLEY, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; ROBERT S GORIN, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; HENRY H SCOTT JR, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan; and GERALD L SHORES, member of the Retirement Plans Committee of the J C Penney Company Inc Pension Plan

Defendant-Appellees.

Appeal from the United States District Court
For the Northern District of Texas

November 25, 1997

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

This appeal concerns the interpretation of two paragraphs of an agreement settling a class action suit ("Settlement Agreement") based on the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, between the J.C. Penney Company Pension Plan (the "Pension Plan") and J.C. Penney's former employees. Forbush and Rhodes, acting as class representatives, appeal the district court's denial of the class' motion seeking to compel the pension plan to calculate its liability under the Settlement Agreement in present value discounted dollars for purposes of applying the ceiling on its liability payment. We reverse and remand for proceedings not inconsistent with this opinion.

I

This appeal grows out of a class action suit filed by former J.C. Penney employees alleging that the employees' pension benefits should have been calculated using actual social security benefits, rather than an estimated benefit contained in a formula used by the pension plan. Both parties were unsure of the exact size of the class and amount of benefits that the pension plan would owe to the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

class. The pension plan sought to cap its potential liability, while class counsel sought both to maximize current recovery and to prevent any erosion in the real value of the recovery as a result of the time value of money during the period in which the eligible class and benefits were determined. Accordingly, prior to trial, the parties reached a settlement, and memorialized it in the Settlement Agreement. The Settlement Agreement provides for a Total Settlement Payment ("TSP") of between $45 million (the "floor") and $80 million (the "ceiling"), as determined by the number of claims filed and size of the benefits claimed.

After the court accepted the Settlement Agreement in February of 1995, class counsel hired an administrator to determine the eligibility of former J.C. Penney employees for participation in the settlement and the amount of benefits that the pension plan owed each class member. The size of the class and benefits owed unfortunately exceeded everyone's expectations and, perhaps more importantly, the $80 million ceiling. The individual class members' benefits, called Recalculated Pension Benefits ("RPBs"), amounted to an aggregate of slightly over $100 million, thereby triggering a provision in the Settlement Agreement requiring a pro rata reduction in each member's RPB.

The calculation of the RPBs also took twenty-one months and was not completed until November of 1996. This delay decreased the value of the $80 million ceiling as a result of the adverse effects of the time value of money. In September of 1996 and prior to payment of the benefits to the class, class counsel demanded that

-3-

the TSP be calculated in 1995 dollars for purposes of applying the ceiling, to account for the decrease in the value of the ceiling, which would make the ceiling worth $88 million in current dollars. The pension plan refused this demand, and class counsel sought an order in district court requiring that the ceiling be so calculated, which they stylized as "Motion for Order Requiring Defendants to Comply With Settlement Agreement." The district court referred this motion to a magistrate judge, who found that the Settlement Agreement provided that the pension plan's maximum liability was $80 million dollars, however denominated, and denied the class' motion. After a *de novo* review, the district court affirmed the magistrate's order.[1] This appeal timely followed.

## II

We review the district court's interpretation of the Settlement Agreement *de novo* as a question of law, applying Texas law, as provided for in the Settlement Agreement. *See Westwind Exploration, Inc. v. Homestate Savings Ass'n*, 696 S.W.2d 378, 381 (Tex. 1985) (holding that under Texas law, if there is no ambiguity, the construction of a contract is a question of law for the court). Whether the Settlement Agreement is ambiguous is also a question of law, and the Settlement Agreement does not become ambiguous merely because the parties disagree as to its correct

---

[1] We decline to address the class' arguments as to whether the magistrate's findings should be vacated because they were issued in an order, and whether the district court reviewed the magistrate's findings *de novo* or under a clear error standard because we decide the proper interpretation of the legal provisions of the Settlement Agreement *de novo*. *See Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992).

-4-

interpretation. *See D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir. 1992). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law." *Id*.

Our primary concern is to effectuate the parties' intent, as expressed in the Settlement Agreement. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly v. Rangers Management, Inc*, 727 S.W.2d 527, 529 (Tex. 1987). We discern the intent of the parties by reading the Settlement Agreement as a whole, and giving effect to each provision contained in the Settlement Agreement. *See Forbau*, 876 S.W.2d at 133. We attempt to avoid interpreting the Settlement Agreement in a way that would render any provision meaningless. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). However, "[t]he clear language of the contract may not be rewritten by the courts after the parties have taken pains to bargain for and draft language which suits their specific purposes." *Berman v. Rife*, 644 S.W.2d 574, 576 (Tex. App. 1983, writ ref'd n.r.e.).

The Settlement Agreement states in pertinent part:

V.    Settlement Program

* * *

   B.    Limits and Valuation of Total Amount of Settlement
         Proceeds.

         * * *

-5-

2. The Total Settlement Payment shall not be more than $80 million. If the Total Settlement Payment would otherwise exceed $80 million, Separated Class Members, who may receive a Recalculated Pension Benefit, or their Representatives shall incur a pro rata reduction in the amount of their Recalculated Pension Benefits until the Total Settlement Payment equals $80 million.

3. For purposes of the above, the Total Settlement Payment shall be calculated by the Claims Administrator and valued as specified in Section VI.F, and discounted with a 5¼% rate of interest to its present value as of January 31, 1995. There shall be no adjustments to the above $45 million floor or $80 million ceiling due to interest accruing under Section V.C.

Based on these provisions, the magistrate found that the Settlement Agreement was not ambiguous and that the parties intended the $80 million ceiling in paragraph V.B.2 to be a "hard" ceiling (*i.e.*, that the pension plan's maximum liability should not exceed $80 million, figured in current dollars). The magistrate based his decision on the fact that the parties intended to cap the total liability of the pension plan and that no provision in the Settlement Agreement provided for increasing the ceiling to offset the adverse effects of the time value of money. The magistrate further found that the present value discounting provision in paragraph V.B.3 only concerns the process for reduction of benefits in the event that the TSP exceeds $80 million. Supporting this interpretation was the second sentence of paragraph V.B.3, which provides that neither the floor nor the ceiling should be adjusted

-6-

for interest accruing under paragraph V.C.

While we agree that the Settlement Agreement is not ambiguous, the magistrate's interpretation of the agreement is mistaken because his interpretation renders the present value discounting provision of paragraph V.B.3 a nullity. The magistrate and district court found that the present value discounting provision only refers to the method for taking a pro rata reduction in the TSP when it exceeds the ceiling. The structure of section V.B, however, suggests that paragraph V.B.3 applies to the entirety of both paragraphs V.B.1 and V.B.2. Paragraph V.B.1 establishes a floor of $45 million for the TSP, and paragraph V.B.2 creates a ceiling of $80 million. Paragraph V.B.3 begins "[f]or purposes of the above," and then sets forth the present value discounting methodology. Grammatically, we cannot see any way to say that "[f]or purposes of the above" means that the present value discounting provision of paragraph V.B.3 applies to paragraph V.B.2 (the ceiling) but not to paragraph V.B.1 (the floor). Thus, it is the discounted present value of the TSP that is compared to the ceiling and floor, not its current value.

Because it is the discounted present value of the TSP that is compared to the ceiling and floor, there will be instances when the discounted present value is within the ceiling and floor, but the current value exceeds the ceiling.[2] An example illustrates this

_____

[2]    For the sake of clarity, we generally refer to the discounted present value of the TSP as its "constant value" and its current value in 1997 dollars as its "nominal value." This terminology corresponds with that of economists, who refer to a discounted present value as the constant, or real, value, and the

-7-

point:  assume the nominal value of the TSP is $84 million, and that its discounted present value is approximately $76.5 million. While the nominal value exceeds the $80 million ceiling, the discounted present value is below the $80 million ceiling.  If, as the magistrate contends, the TSP cannot exceed a nominal amount of $80 million, then the discounting provision of paragraph V.B.3 becomes superfluous because the second sentence of V.B.2 automatically causes a pro rata reduction in the TSP down to $80 million.  However, if paragraph V.B.3 is given effect and the discounted present value of the TSP is compared to the ceiling, then no pro rata reduction will occur because the constant value is less than $80 million, even though the nominal value exceeds $80 million.  Accordingly, we conclude that the constant value of the ceiling is fixed, but that its nominal value can vary.  Stated in another way, the floor and ceiling provisions in paragraphs V.B.1 and V.B.2 fix the minimum and maximum potential liability of the pension plan; the present value discounting provision specifies that these limits are calculated in constant dollar terms and ensures that the value of the bargain contained in the Settlement Agreement, from the point of view of the class, will not deteriorate due to the adverse effects of the time value of money.

The magistrate also found that the second sentence of paragraph V.B.3, which provides that neither the floor nor the ceiling should be adjusted for interest accruing under paragraph V.C, supports the conclusion that the parties intended to establish

current, or changing, value as the nominal value.

-8-

a hard ceiling. Under the magistrate's interpretation, this sentence trumps the present value discounting provision found in the first sentence of this paragraph because the present value discounting provision has no effect when the nominal value of the TSP exceeds $80 million, as an automatic reduction in the nominal value of the TSP to $80 million is required. A better interpretation is that this sentence merely states that even though interest accrues on RPBs under paragraph V.C, the constant value of the $80 million ceiling will not be increased to incorporate this interest. This interpretation is consistent with our understanding of the first sentence of paragraph V.B.3 and the floor and ceiling provisions in paragraphs V.B.1 and V.B.2 because in all provisions, references to the ceiling and floor refer to the comparison with the discounted present value of the TSP, not to the nominal value.

In *Koch Industries, Inc. v. Sun Co.*, 918 F.2d 1203 (5th Cir. 1990), we interpreted a contract with a present value discounting provision. Koch bought a petroleum refinery from Sun in November 1981, and agreed to assume Sun's pension plan liabilities for its workers at the refinery. In return, Sun agreed to transfer to Koch funds equal to the present value of the pension benefits and future cost of living adjustments expected to be paid to those workers when they retired. The calculation of those benefits took some time, and Sun did not actually transfer the funds until the spring of 1982. Koch sued Sun, claiming that Sun should have included interest on the funds from the date it sold the refinery until it paid the funds, based on language in the contract of sale which

stated that "[a]s of the Closing Date, the Suntide Plan . . . shall be funded by [Sun]. . . ." *Id*. at 1208. We rejected Koch's claim, noting that if the parties had intended to provide for interest, they would have discounted the present value of the benefits "as of" the date the funds were transferred. Similarly, if the parties here had intended the pension plan to pay no more than a nominal amount of $80 million, they would have either discounted the TSP to the date on which the RPB calculations were finalized or simply omitted the present value provision.[3]

Thus, we hold that the magistrate judge erred in concluding that the pension plan could not be required to pay a nominal amount in excess of $80 million, and hold that the Settlement Agreement requires the pension plan to calculate the TSP, for purposes of applying the ceiling, in 1995 dollars. While such a holding may conflict with the intent of the pension plan to cap its liability in absolute terms, based on the clear language of the Settlement

---

[3] Another critical factor to our decision in *Koch* was that the contract provided for discounting the pension fund liabilities to the closing date on the contract, but was silent as to whether post-closing date interest should be paid. Even assuming that post-closing date interest would have been proper, we would have had no principled method to determine what interest rate was proper. *Id*. at 1208. No such problem exists in this case, because the Settlement Agreement provides that the discounted present value of the TSP should be compared to the floor and ceiling. If that discounted present value exceeds the ceiling, then a pro rata reduction in the TSP will occur. Thus, the parties estimate that the TSP amounts to approximately $100 million, which has a discounted present value of $91.24 million. This $91.24 million exceeds $80 million, so the current value of the TSP (and each class member's RPB) is proportionally reduced using the formula: $100 million x ($80 million / $91.24 million). Accordingly, unlike *Koch*, we do not have to speculate as to what the proper interest rate should be.

Agreement, we can only assume that in the give-and-take of negotiations, the pension plan compromised and accepted a limit on its maximum liability in real, rather than nominal, terms.[4]

                                    III

The pension plan argues that the class should be judicially estopped from arguing that the $80 million ceiling refers to 1995 dollars because it contends that the class has consistently maintained, until recently, that the maximum total liability of the pension plan would be $80 million dollars.[5] The class argues that judicial estoppel should not apply because its counsels' past statements are not inconsistent with its current position.

Judicial estoppel bars a litigant from asserting a position in a judicial proceeding that is contrary to, or inconsistent with, a position previously taken in the current or a prior proceeding. *See Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996). "The doctrine prevents internal inconsistency, precludes litigants

---

[4]     The pension plan does not argue that the administrator took too long to calculate the RPBs, thereby resulting in the class breaching its implied covenant to perform timely.  Under Texas law, when the parties do not specify a time for performance, a duty to perform within a reasonable time is implied at law.  *See M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 622 (Tex. App. 1987, no writ).  In the absence of such an argument, we decline to decide whether the amount of additional money (approximately $8 million) that the pension plan will be required to pay due to the delay is unreasonable.

[5]     The pension plan raised this argument before the magistrate and district court, although neither decided the argument.  Because the pension plan has consistently renewed this argument, we can consider it on appeal. *See Henderson v. Century Fin. Co.*, 577 F.2d 997, 1002 n.5 (5th Cir. 1978) (stating that an appellate court can consider alternative basis for upholding lower court's decision raised but not decided below).

from 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment." *Id*. (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

Contract interpretation is an issue of state law, and accordingly we apply the formulation of judicial estoppel employed by Texas courts. *See United States ex rel. Am. Bank v. C.I.T. Constr., Inc.*, 944 F.2d 253, 258 n.7 (5th Cir. 1991) (holding that when federal issue is decided, federal law of judicial estoppel is applied, but that when nonfederal issue is decided, state law formulation should be used). Texas courts require the presence of four elements for judicial estoppel to apply: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) the party now sought to be estopped successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *See Owen v. Knop*, 853 S.W.2d 638, 641 (Tex. App. 1993, writ denied). Judicial estoppel applies to statements made by counsel as well parties. *See Goldman v. White Rose Distrib. Co.*, 936 S.W.2d 393, 398 (Tex. App. 1996), *vacated on other grounds*, 949 S.W.2d 707 (Tex. 1997).

We find that it would be inappropriate to apply judicial estoppel in this case. As a threshold matter, class counsels' comments at the hearing where the district court judge approved the Settlement Agreement are not clearly and unequivocally inconsistent with the position they now take. Neither discounted present

valuation nor paragraph V.B.3 was even discussed at the hearing. Although certain statements by class counsel suggested that the liability of the pension plan could not exceed $80 million, it is unclear whether $80 million referred to constant or nominal value. Moreover, the thrust of Judge Kendall's questioning at that hearing was directed to whether the ceiling was large enough and fair to the class; he was concerned about the potential for collusion between class counsel and the pension plan at the expense of the class. Being informed that the Settlement Agreement protected the class from the adverse effects of the time value of money by providing for a constant ceiling of $80 million would have only strengthened his impression that the Settlement Agreement was fair to the class. Thus, we find that judicial estoppel should not apply in this case because class counsels' comments at the hearing are not clearly and unequivocally inconsistent with their current position.[6] 0. Class counsel argue that we should disregard their

_____

[6] Although we do not decide the issue now, we note that judicial estoppel might apply to prevent class counsel from seeking additional attorneys' fees as a result of our decision today. When the parties submitted the Settlement Agreement to the district court for approval, class counsel also submitted an application for award of attorneys' fees. This application requested an award of ten percent of the total settlement fund, which class counsel asserted would amount to between $4.5 and $8.0 million. At the hearing in which the district court judge approved the Settlement Agreement, the judge inquired about attorneys' fees, and asked "I don't know you Mr. Bruce [lead class counsel], but let me just ask you: You know, you are asking me for I guess what could be up to $8 million?" Mr. Bruce replied, "yes." This answer is inaccurate if the nominal value of the TSP can exceed $80 million because ten percent of the nominal value of the TSP is $8.8 million dollars (based on a current nominal TSP of $88 million), which is more than the $8 million that the class counsel asserted is the maximum to which they are entitled.

statements about attorney's fees because the Settlement Agreement provides that disputes about attorney's fees are severable from the rest of the agreement. We disagree, because Texas courts have clearly held that even though attorney's statements are not evidence, they establish a client's legal position. *See Goldman*, 936 S.W.2d at 398 (holding that attorney's statements can bind its client to that point).[7]

For the foregoing reasons, the order of the district court denying the class's motion is REVERSED and REMANDED for proceedings not inconsistent with this opinion.

---

In the appeal of this attorney fee order to the Fifth Circuit, class counsel once again asserted that the maximum to which they are entitled is $8 million. *See Forbush v. J.C. Penney Pension Plan*, 98 F.3d 817, 819 (5th Cir. 1996). Both the district court and we are entitled to rely on these statements made in open court by the class counsel as accurate. *See Ergo Science*, 73 F.3d at 598-99 (holding that district court judge could rely on statements made by party's counsel in court renouncing a claim, and that party would thereafter be estopped from renewing the claim upon appeal). Therefore, we think that judicial estoppel might apply to prevent class counsel from hereafter attempting to claim an additional $800,000.